O

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

ANNA MARIE GUZMAN,

          Plaintiff,

      v.

CAROLYN W. COLVIN,[1]
Acting Commissioner of Social
Security,

          Defendant.

NO. EDCV 12-02196-MAN

MEMORANDUM OPINION
AND ORDER

Plaintiff filed a Complaint on December 21, 2012, seeking review of the denial of plaintiff's application for supplemental security income ("SSI"). On January 14, 2013, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. The parties filed a Joint Stipulation on August 27, 2013, in which: plaintiff seeks an order reversing the Commissioner's decision and remanding this case for the payment of benefits or, alternatively, for further administrative proceedings; and the Commissioner requests that her decision be affirmed or, alternatively, remanded for further administrative proceedings. The Court has taken the parties' Joint Stipulation under submission without oral argument.

---

[1]    Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013, and is substituted in place of former Commissioner Michael J. Astrue as the defendant in this action. (*See* Fed. R. Civ. P. 25(d).)

1

2

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

3      Plaintiff filed an application for SSI on May 31, 2007.  (Administrative Record ("A.R.") 754.)[2]

4  Plaintiff, who was born on January 21, 1966 (A.R. 753),[3] claims to have been disabled since

5  January 1, 1986 (A.R. 746), due to the "impairments caused by diabetes mellitus, high blood

6  pressure, arthritis, back pain, lumbar disc disease and osteoporosis" (Joint Stipulation ("Joint

7  Stip.") at 2).  Plaintiff has no past relevant work experience.  (A.R. 753.)

8

9      After the Commissioner denied plaintiff's application initially and upon reconsideration,

10  plaintiff requested a hearing.  (A.R. 9.)  On April 9, 2009, plaintiff, who was represented by

11  counsel, appeared and testified at a hearing before Administrative Law Judge F. Keith Varni ("ALJ

12  Varni").  (*Id.*)  On June 22, 2009, ALJ Varni denied plaintiff's claim (A.R. 9-14), and the Appeals

13  Council subsequently denied plaintiff's request for review of ALJ Varni's decision (A.R. 322-24).

14

15      On October 8, 2009, plaintiff sought review in this Court, which remanded the case for

16  further proceedings pursuant to the parties' May 20, 2010 Stipulation to Voluntary Remand

17  Pursuant to Sentence Four of 42 U.S.C. § 405(g) and to Entry of Judgment. (A.R. 285-88.)

18  Following the Court's issuance of the Remand Order and Judgment, the Appeals Council vacated

19  ALJ Varni's June 22, 2009 decision and remanded the case for further administrative proceedings.

20  (A.R. 330-34.)

21

22      On February 17, 2011, plaintiff, who was represented by counsel, appeared and testified

23  at a hearing before Administrative Law Judge Michael D. Radenksy (the "ALJ").  (A.R. 270.)

24

25  _____

26      [2]      On July 31, 2009, plaintiff filed another application for SSI (A.R. 433-39), and on
   August 5, 2009, she filed an amendment to that application (A.R. 440-42).  It was determined,
   however, that the July 31, 2009 SSI application was duplicative of the original claim.  (A.R. 333.)

27      [3]      On the date her application was filed, plaintiff was 41 years old, which is defined as
28  a younger individual.  (*See* 20 C.F.R. § 416.963.)

2

1   Medical expert Samuel Landau and vocational expert Sandra M. Fioretti also testified.  (*Id.*)  On
2   April 21, 2011, the ALJ denied plaintiff's claim.  (A.R. 270-77)
3
4        On July 8, 2011, plaintiff sought review in this Court, which again remanded the case for
5   further proceedings pursuant to the parties' Stipulation to Voluntary Remand Pursuant to Sentence
6   Four of 42 U.S.C. § 405(g) and to Entry of Judgment.  (A.R. 831-34.)  Following the Court's
7   issuance of the Remand Order and Judgment, the Appeals Council vacated the ALJ's decision and
8   remanded the case for further administrative proceedings.  (A.R. 843-44.)
9
10       On September 7, 2012, plaintiff, who was represented by counsel, again appeared and
11  testified at a hearing before the ALJ.  (A.R. 746.)  Vocational expert David A. Rinehart and medical
12  expert Gerald M. Weingarten also testified.  (*Id.*)  On September 28, 2012, the ALJ denied
13  plaintiff's claim.  (A.R. 746-54.)  That decision is now at issue in this action.
14
15                           **SUMMARY OF ADMINISTRATIVE DECISION**
16
17       In his September 28, 2012 decision, the ALJ found that plaintiff has not engaged in
18  substantial gainful activity since May 31, 2007, her application date.  (A.R. 748.)  The ALJ
19  determined that plaintiff has the severe impairments of:  "insulin dependent diabetes mellitus
20  Type II, with some diabetic neuropathy"; "coronary artery disease, status post stent placement";
21  and "subjective low back pain."  (*Id.*)  The ALJ also found that plaintiff's "medically determinable
22  mental impairment of mood disorder does not cause more than minimal limitation in the
23  [plaintiff]'s ability to perform basic work activities and is therefore nonsevere."  (*Id.*)  After
24  considering plaintiff's impairments, the ALJ concluded that plaintiff does not have an impairment
25  or combination of impairments that meets or medically equals the listed impairments in 20 C.F.R.
26  Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926).  (A.R. 749.)
27  ///
28  ///

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform:

> light work as defined in 20 CFR [§] 416.967(b) except she can lift 20 [pounds] occasionally and 10 pounds frequently, sit for 6 hours of an 8-hour workday with appropriate breaks, and stand and walk for 2 hours out of 8.  She is precluded from climbing ladders[,] ropes[,] or scaffolds, but otherwise [can] occasionally perform postural activities.  She cannot work at unprotected heights or around dangerous or hazardous machinery and should avoid concentrated exposure to extreme cold.

(A.R. 749.)  In making this finding, the ALJ considered the subjective symptom testimony of plaintiff, which the ALJ found was not entirely credible, as well as the medical evidence and opinions of record.

Based on  plaintiff's age, education,[4] and RFC, as well as the testimony of the vocational expert, the ALJ determined that plaintiff could perform "jobs that exist in significant numbers in the national economy," including the jobs of information clerk, office helper, and addresser.  (A.R. 753-54.)  Accordingly, the ALJ concluded that plaintiff "has not been under a disability, as defined in the Social Security Act, since May 31, 2007, the date the application was field."  (A.R. 754.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole.  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is "'such relevant evidence

---

[4]    The ALJ determined that plaintiff "has a limited education and is able to communicate in English."  (A.R. 753.)

4

1  as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted).

2  The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett

3  v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003).  "While inferences from the record can constitute

4  substantial evidence, only those 'reasonably drawn from the record' will suffice."  Widmark v.

5  Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

6

7      Although this Court cannot substitute its discretion for that of the Commissioner, the Court

8  nonetheless must review the record as a whole, "weighing both the evidence that supports and

9  the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health

10  and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995

11  (9th Cir. 1985).  "The ALJ is responsible for determining credibility, resolving conflicts in medical

12  testimony, and for resolving ambiguities."  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.

13  1995).

14

15      The Court will uphold the Commissioner's decision when the evidence is susceptible to

16  more than one rational interpretation.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

17  However, the Court may review only the reasons stated by the ALJ in his decision "and may not

18  affirm the ALJ on a ground upon which he did not rely."  Orn, 495 F.3d at 630; *see also* Connett,

19  340 F.3d at 874.  The Court will not reverse the Commissioner's decision if it is based on harmless

20  error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential

21  to the ultimate nondisability determination.'"  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th

22  Cir. 2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* Burch, 400

23  F.3d at 679.

24

25                              **DISCUSSION**

26

27      Plaintiff alleges three sources of error.  First, plaintiff claims that the ALJ failed to consider

28  properly the May 2012 electro-diagnostic testing report by Richard S.A. Tindall, M.D., a

5

1   neurologist.   (Joint Stip. at 6.)   Second, plaintiff claims the ALJ did not evaluate plaintiff's
2   credibility properly. (*Id.*)  Lastly, plaintiff claims that the ALJ did not properly determine at step
3   5 that plaintiff could perform other work in the national economy.  (*Id.*)

4

5   **I.  <u>The ALJ Erred By Failing To Consider The Opinion Of Dr. Tindall.</u>**

6

7          An ALJ is obligated to take into account all medical opinions of record.   20 C.F.R. §
8   416.927(b).  It is the responsibility of the ALJ to resolve conflicts in medical testimony and analyze
9   evidence.  <u>Magallanes v. Bowen</u>, 881 F.2d 747, 750 (9th Cir. 1989).  In the hierarchy of physician
10  opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion
11  carries more weight than an examining physician's, and an examining physician's opinion carries
12  more weight than a reviewing physician's."  <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1202 (9th Cir.
13  2001).

14

15         The opinions of treating physicians are entitled to the greatest weight, because the treating
16  physician is hired to cure and has a better opportunity to know and observe the claimant.
17  <u>Magallanes</u>, 881 F.2d at 751.  When a treating or examining physician's opinion is not contradicted
18  by another physician, it may be rejected only for "clear and convincing" reasons.  <u>Lester v. Chater</u>,
19  81 F.3d 821, 830 (9th Cir. 1995).  When contradicted by another doctor, a treating or examining
20  physician's opinion may only be rejected if the ALJ provides "specific and legitimate" reasons
21  supported by substantial evidence in the record.  *Id.*; *see also* <u>Ryan v. Comm'r of Soc. Sec.</u>, 528
22  F.3d 1194, 1198 (9th Cir. 2008); <u>Orn</u>, 495 F.3d at 632.

23

24         On May 3, 2012, Dr. Tindall examined and performed electrodiagnostic testing on plaintiff.
25  (A.R. 1038-43.)  On physical examination, Dr. Tindall noted that plaintiff had:  an abnormal affect
26  (depressed and anxious); "distal weakness 4/5 feet and 4+/5 hands"; "areflexic" feet and hands;
27  and "vibration and position and pin all absent in feet and reduced in hands (stocking, glove
28  pattern[)]."  (A.R. 1038.)  Based on his electrodiagnostic testing, Dr. Tindall opined that:  "[t]here

1  is *clear evidence* of a *severe* generalized polyneuropathy, demyelinating more than axonal, distal

2  and symmetrical, and symptomatic with both a sensory ataxia and painful dysesthesias"; "[t]here

3  may be superimposed lumbar root disease at the L3-4 level (and below) given EMG changes but

4  in presence of a severe neuropathy it is difficulty to tell"; and "[t]he pattern seen is consistent

5  with IDDM [(insulin dependent diabetes mellitus)] but other disorders may be present including

6  a Chronic Inflammatory Demyelinating Neuropathy (CIDP, autoimmune)." (A.R. 1039.)  Further,

7  as properly noted by plaintiff, Dr. Tindall found that not only was the velocity and amplitude of

8  plaintiff's nerve impulse reduced in some places, it was *entirely absent* in most.[5]  (Joint Stip. at

9  8; emphasis added.)

10

11      While an ALJ need not discuss every piece of evidence, an ALJ must explain why significant

12  and probative evidence -- such as the findings and diagnoses by Dr. Tindall -- is rejected.  *See*

13  Vincent v.Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (an ALJ must provide an explanation

14

---

15  [5]      Specifically, Dr. Tindall's testing revealed the following:

16      Evaluation of the Left Median Motor nerve showed prolonged distal
        onset latency (8.4 ms), reduced amplitude (0.5 mV), and decreased
17      conduction velocity (A Elb-APB, 28 m/s).  The Left Peroneal Motor
        nerve showed **no response** (9 cm), **no response** (B Fib), and **no**
18      **response** (Poplt).  The Left Radial Motor nerve showed prolonged
        distal onset latency (3.7 ms).  The Left Tibial Motor nerve showed **no**
19      **response** (10 cm) and **no response** (Knee).  The Left Ulnar Motor
        nerve showed prolonged distal onset latency (7.1 ms), reduced
20      amplitude (0.6 mV), decreased conduction velocity (B Elbow-ADQ, 43
        m/s), and decreased conduction velocity (A Elbow-B Elbow, 38 m/s).
21      The Left Sup Peron Anti Sensory nerve showed **no response** (12 cm)
        and **no response** (Site 2).  The Left Sural Anti Sensory nerve showed
22      **no response** (14 cm).  The Left Median Orth Sensory nerve showed
        **no response** (2nd Digit).   The Left Radial Ortho Sensory nerve
23      showed **no response** (Wrist).   The Left Ulnar Ortho Sensory nerve
        showed **no response** (5th Digit).   The Left Median/Ulnar Palm
24      Comparison nerve showed **no response** (Median Palm) and **no**
        **response** (Ulnar Palm).
25
        F Wave studies indicate that the Left Median F Wave has prolonged
26      latency (40.04 ms).  The Left Peroneal F Wave has **no response**.
        The Left Tibial F Wave has **no response** . The Left Ulnar F Wave has
27      prolonged latency (39.93 ms).

28  (A.R. 1038-39; emphasis added.)

1  when he rejects "significant and probative evidence") (citation omitted).  Here, the ALJ not only

2  failed to discuss Dr. Tindall's opinion but also failed to give any reason, let alone a specific and

3  legitimate reason, for rejecting his opinion.  This constitutes error.

4

5  Further, the error committed by the ALJ is not harmless.  As an initial matter, Dr. Tindall's

6  diagnosis of severe polyneuropathy and his finding that many nerves in plaintiff's extremities are

7  unresponsive to electrodiagnostic testing lend support to plaintiff's complaints of manipulative and

8  ambulatory difficulties.  In addition, Dr. Tindall's diagnosis and findings call into question the ALJ's

9  determination that plaintiff has the severe impairment of "some neuropathy," as opposed to the

10  impairment of "severe polyneuropathy" as diagnosed by Dr. Tindall.  Moreover, it is unclear

11  whether consultative examiner, Sandra Eriks, M.D, upon whose opinion the ALJ appears to have

12  relied in assessing plaintiff's RFC,[6] had the opportunity to review Dr. Tindall's report prior to

13  rendering her opinion.  *See* 20 C.F.R. § 416.917 ("If we arrange for [a consultative] examination

14  or test, . . . [w]e will also give the examiner any necessary background information about your

15  condition.")  Thus, it is unclear whether Dr. Eriks based her assessment on a sufficiently complete

16  picture of plaintiff's condition, giving due consideration to the diagnosis and findings by Dr.

17  Tindall.[7]

18  ///

19  ///

20  ///

21

22      [6]    While the ALJ detailed the findings of Dr. Eriks, the ALJ never set forth the weight
23  he afforded to her opinion, or to any other opinion of record, in determining plaintiff's RFC.
  Nevertheless, it does appear that the ALJ's decision was informed, at least in part, by the opinion
24  of Dr. Eriks.

25      [7]    For example, while Dr. Eriks noted plaintiff's lack of sensation in her extremities, Dr.
  Eriks attributed this to plaintiff being uncooperative.  Specifically, Dr. Eriks stated that "[t]ests for
26  radiculopathy are difficult due to questionable cooperation and questionable responses.  I cannot
  get any reflexes or sensation. . . .  I suspect that she does not actually require an assistive device
27  for ambulation, although this cannot be confirmed on today's examination due to no cooperation."
  (A.R. 1048.)  However, had Dr. Eriks reviewed the significant objective findings by Dr. Tindall,
28  which confirm the presence of severe polyneuropathy, she may have reached a different
  conclusion and found that plaintiff had manipulative and ambulatory restrictions.

1    Accordingly, for the aforementioned reasons, the ALJ committed reversible error by failing

2    to consider the opinion of Dr. Tindall.[8]

3

4    **II.    Remand Is Required.**

5

6    The decision whether to remand for further proceedings or order an immediate award of

7    benefits is within the district court's discretion.  Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir.

8    2000).  Where no useful purpose would be served by further administrative proceedings, or where

9    the record has been fully developed, it is appropriate to exercise this discretion to direct an

10   immediate award of benefits.  Id. at 1179 ("[T]he decision of whether to remand for further

11   proceedings turns upon the likely utility of such proceedings.").  However, where there are

12   outstanding issues that must be resolved before a determination of disability can be made, and

13   it is not clear from the record that the ALJ would be required to find the claimant disabled if all

14   the evidence were properly evaluated, remand is appropriate.  Id. at 1179-81.

15

16   Based on the foregoing, there are several matters that the ALJ needs to review and

17   reconsider on remand.  Specifically, when viewed properly, the opinion of Dr. Tindall may support

18   plaintiff's complaints and alleged limitations, which the ALJ found to be "way out of proportion to

19

20   _____

21   [8]    The Commissioner contends that the ALJ was under no duty to discuss Dr. Tindall's report, because it did not constitute a medical opinion.  (Joint Stip. at 18.)  The regulations define

22   medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your

23   symptoms, diagnosis, and prognosis, what you can do despite your impairment(s), and your physical or mental restrictions."  20 C.F.R. § 416.927(a)(2) (emphasis added).  As discussed

24   supra, Dr. Tindall's report contains information regarding the nature and severity of plaintiff's impairment.  Specifically, Dr. Tindall found that plaintiff has "severe generalized polyneuropathy"

25   and possible "superimposed lumbar root disease at the L3-4 (level)."  (A.R. 1039.)  Further, Dr. Tindall specifically noted that plaintiff's polyneuropathy is accompanied by "sensory ataxia," which

26   plaintiff notes, and the Commissioner does not contest, indicates "'a loss of coordination . . . resulting in poorly judged movements.'"  (Joint Stip. at 14; citation omitted.)  Accordingly, because

27   Dr. Tindall's reports describes the nature and severity of plaintiff's polyneuropathy, the Commissioner's contention is unavailing.  If the ALJ believed that clarification regarding the nature

28   and severity of plaintiff's impairments caused by her "severe generalized polyneuropathy" was necessary, he should have further developed the record on this issue.

[the] objective findings." (A.R. 750.)  Thus, the ALJ's conclusion regarding plaintiff's credibility may change.  In addition, the ALJ's conclusion regarding plaintiff's RFC and plaintiff's ability to do other work may change.  Accordingly, the Court does not reach plaintiff's second and third claims, *to wit*, that the ALJ failed to consider plaintiff's credibility properly and erred at step 5 in determining that plaintiff can perform other work.

Remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors.  *See* Bunnell, 336 F.3d at 1116 (affirming remand order based, in part, on ALJ's failure to provide adequate reasons for rejecting claimant's treating physicians' opinions).  On remand, the ALJ must correct the above-mentioned deficiencies and errors.

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

DATED:  June 17, 2014

*Margaret A. Nagle*

MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

10